UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARTIN ARNAUDOV, and others,<br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DELTA MECHANICAL, INC., and others,<br>Defendants. | Case No. 13-cv-02306 NC<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 80 |

Delta moves for partial summary judgment on plaintiffs' wrongful termination and retaliation claims. Delta argues that plaintiffs Martin Arnaudov, Mihail Slavkov, Victor Dragni, and Ivan Velichkov were neither retaliated against, nor terminated, for expressing dissatisfaction with their compensation. Because there are triable issues of material fact, the Court denies Delta's motion.

In California, courts use the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze retaliation and wrongful termination claims at the summary judgment stage. *See Loggins v. Kaiser Permanente Internat.*, 151 Cal. App. 4th 1102, 1108-09 (2007). Here, Delta argues that plaintiffs fail to satisfy the first stage of the *McDonnell Douglas* framework by not showing that a *prima facie* case of retaliation or wrongful termination exists. According to Delta,

Case No. 13-cv-02306 NC
ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT

plaintiffs are "not able to point to any specific facts of complaints [regarding compensation] made to [Delta]." Dkt. No. 80 at 20 (emphasizing that there is "no written record of such complaints"). Delta also argues that even if the plaintiffs satisfied the first stage, plaintiffs cannot provide evidence of pretext to refute Delta's contention that it had a legitimate nondiscriminatory reason to discharge plaintiffs—namely, that plaintiffs "boycott[ed] their job responsibilities without any prior notice" and disrupted business operations on the morning of April 22, 2013. Dkt. No. 80 at 25.

But plaintiffs do present evidence that complaints were made to Delta prior to their discharge. A reasonable jury can view this as evidence that Delta's explanation for terminating the plaintiffs was pretextual, and that Delta retaliated against plaintiffs for their attempt to enforce wage and hour law. For instance, on February 16, 2013, Arnaudov sent an email to Delta (which eventually reached Delta's president and CEO) describing certain payroll concerns, including the fact that certain employees were not paid on time and did not receive paystubs. Dkt. No. 87 at 10-11 ("This is absolutely ridiculous . . . . Every company in America pays their employees on time and provides pay stubs as is required by law."). Similarly, Slavkov, who communicated with Delta management during the morning of the job action on behalf of the employees, also sent a prior email to his supervisor Arnaudov and to Delta dispatchers stating that Delta illegally withheld his pay. Dkt. No. 84-1 at 4 ("I have only received $500 of the $3,725 owed to me as wages earned. The unauthorized withholding of payroll is punishable by both federal and state law.").

Still, shortly after the job action started, Delta contends that it never terminated the employees; rather the employees quit even though Delta's regional manager Gary Kolov asked the employees to come back to work and committed to address their pay concerns. *See* Dkt. No. 80-1(Kolov Dep.) at 25-27. Indeed, Kolov testified that he never told any of the employees that morning of the job action that they were "fired." *Id.* at 27.

Yet plaintiffs present evidence that suggest otherwise. Plaintiffs state that after they reiterated to Kolov their refusal to go to work until Delta fixed the payment issues, Kolov made no reassurances to resolve their concerns. According to plaintiffs, Kolov simply

stated that those who refused to work would be fired and that Delta would collect keys to plaintiffs' work vehicles. Dkt. No. 84 (Slavkov Decl.) at 6 ("What [Kolov] did say was that anyone who would not go back to work would be fired."); Dkt. No. 91 (Dragni Decl.) at 4 ("At that time [on April 22], I thought I was fired because we were told to leave the keys."); Dkt. No. 93 (Velichkov Decl.) at 6 (stating that he "figured we were all fired" after Slavkov told Kolov that none of the employees were going to work under the current conditions, and Kolov responded with something to the effect of "Well, then, you are fired. Turn in your keys."). Plaintiffs also point out that even though Kolov testified in a deposition that he did not remember whether he told Slavkov he was "fired," only telling him to "leave the keys," Kolov added, "What's the difference?" Dkt. No. 80-1 at 26-27.

In sum, in light of the factual disputes and resolving all doubts in favor of the nonmoving party, a reasonable jury could conclude that Delta terminated the employees for raising concerns about compensation, and engaging in a job action to protest violations of wage and hour law. *See Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F. Supp. 2d 682, 691 (E.D. Wis. 2007) ("[A]n employee can challenge under the FLSA actions taken against him in retaliation for protesting an FLSA violation through a job action.") (citing *Colindres et. al. v. Quietflex Mfg.*, 2002 U.S. Dist. LEXIS 27782, at *28-29 (S.D. Tex. June 22, 2002) (denying defendants' motion for summary judgment as to whether plaintiffs' work stoppage was protected activity)).

Based on this evidence, the Court finds that there are genuine issues of material fact over whether plaintiffs established a *prima facie* case for retaliation and wrongful termination, and whether Delta's proffered reasons for discharging Arnaudov, Slavkov, Dragni, and Velichkov were pretextual. Accordingly, the Court denies Delta's motion for partial summary judgment.

IT IS SO ORDERED.

Date:  January 7, 2015

_____
Nathanael M. Cousins
United States Magistrate Judge